On Rehearing.
MONROE, O. J.
Counsel for plaintiff expresses himself satisfied with the rulings contained in the opinion heretofore handed down, save as to that which holds that it was competent for the notary to write the name and receive the mark of the illiterate witness, and as to another ruling relating to costs; and as the conclusion now reached upon the point first mentioned (by a differently constituted majority of the members of the court, including the writer, who concurred in the original opinion and decree) carries with it all the costs of the suit, it is necessary to give only the reasons for that conclusion.
[1,2] Construing article 1580'of the Civil Code, the opinion heretofore handed down holds that the requirement therein as to the signing of a nuncupative testament by public act for a witness who is unable to write is susceptible of the interpretation that, where a witness to such a testament is unable to write, the signature of another witness, who can write, is to be taken as a signing for him, or those, who cannot, and that in such case the writing, by the notary of the name of the illiterate and the taking of his mark is merely unnecessary and without effect.
There is no disagreement among the members of the court concerning the general rules which govern the interpretation of laws, the question upon which we have differed in this case being whether a particular article of our Civil Code is ambiguous and susceptible of two- interpretations, and, if so, whether the interpretation adopted in the original opinion is the correct one.
The article in question is one concerning the confection of nuncupative testaments by .public act, and reads:
“Art. 1580. This testament must be signed by the witnesses, or at least by one of them for all, if the others cannot write.”
Other articles of the Code which may throw some light on the question to be determined are as follows:
“Art. 1578. * * * Nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place. This testament must be dictated by the testator, and written by the notary as it is dictated. It must then be read to the testator in the presence of the witnesses. Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts.
“Art. 1579. * * * This testament must be signed by the testator; if he declare that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act.”
“Art. 1595. * * * The formalities to which testaments are subject by the provisions of the present section must be observed; otherwise the testaments are null.”
“Art. 1647. * * * Nuncupative testaments received by public acts do not require to be proved, that their execution may be ordered; they are full proof of themselves unless they are alleged to be forged.”
The probative effect thus accorded to the nuncupative testament by public act is not given to it on account of any particular efficacy that it possesses in the matter of the transmission of property, for in that respect, it does not differ from any other testament authorized by law. That advantage is conferred solely upon the condition that, as to the manner of its confection, the instrument shall rigidly conform to the particular requirements of the law upon that subject, *273 and such conformity alone distinguishes it from testaments which are not “full proof of themselves.”
Hence conformity to those requirements is of the very essence of the instrument, and nonconformity means that it is not a nuncupative will by public act.
It has, therefore, been held that—
“When all the legal requisites do not appear from the will itself, it must be declared null and void, because no omission to mention them can be supplied by testimony.” Falkner v. Friend, 1 Rob. 48.
It is true that in the opinion in Succession of Murray, 41 La. Ann. 1115, 7 South. 126, there is what appears to be an unguarded statement to the effect that there is no other formality required in the execution of a nuncupative testament by public act than those enumerated in article 1578; but the error in that statement is demonstrated on the same page of the same opinion, where it is said that—
Article 1595 (to quote the language of the opinion) “employs the word ‘testament’ in its generic sense, and the law-giver intended that it should convey the idea that the several formalities which are required in the confection of different testaments must be observed therein respectively, and not collectively.”
And attention is then called to the fact that the articles which are embraced in section 2 (referred to in article 1595), and which succeed article 1580 of that section, treat of nuncupative testaments under private signature, of the mystic or sealed testaments, and of the olographic testament; all of which is quite true. But it is equally true that article 1580 is found among those articles which treat exclusively of the nuncupative testament by public act; and, if the place of residence of a witness, as required by article 1578, is a requisite which must appear upon the face of the testament, in order to show his competency, a fortiori should the fact that he signed the testament so appear, in order to show that he performed that function (and it may be said that it does appear, if the witness does sign); but in the case of a witness who is unable to sign the requisite to be shown is the alternative, which the law demands, that it shall appear that another witness signed for him. In the instant case it appears on the face of the testament that Anselm was unable to write, but his name and mark are inscribed on the testament, and it is shown, aliunde, that the name was written by the notary and the mark inscribed by the illiterate himself, whilst the names of the two other witnesses appear, as written by themselves, with no intimation, on the face of the testament or elsewhere, that they, or either of them, signed for the illiterate. Reverting, then, to article 1580, we find that it declares that “this testament must be signed by the witnesses,” and then, providing for the contingency that some of the witnesses may not be able to sign, it further declares, “or, at least” [conveying the idea that no further concession on that point could be made] “by one of them for all, if the others cannot write.” It will be observed that the mandatory word “must” controls to the end of the sentence and requires either that the witness sign, or that another witness, and not the notary, sign for him. When, therefore, it appears as it does here, that the other witness who is required to sign for the illiterate does not pretend to have done so and that the notary, who is not authorized to interfere, did so to the extent of writing the name and receiving the mark of the illiterate, it would seem that for the court to hold the transaction to be legal and sustain the will would be either to amend or ignore the law, and disregard our own jurisprudence.
That the law concerning the signing of nuncupative testaments by public acts by the witnesses and by the literate for the illiterate has been as it now is longer than *275 Louisiana has been a state there seems to be no doubt. It was said in Vidal v. Duplantier, 7 La. 45, that—
“The Spanish law required as an indispensable solemnity that the testament should be signed by the testator and witnesses, or by some one of the witnesses for him or them at least” — citing Febrero, pt. 1, c. 2, § 1, Nos. 10 and 12.
Our Code of 1808 contained an article (94) which was identical in terms with article 1580 of our present Code, and another (96— 3) to the same effect, concerning the signing by witnesses of nuncupative testaments under private acts, and upon the adoption of Code of 1825, article 94 of the old Code was retained without change, under the number 1573 (now 1580); but for article 96 — 3 of the old Code there was substituted article 1575 (now 1582) of the new, which requires that the testament “must be signed by the testator, if he knows how or is able to sign, and by the witnesses, or at least two of them, in case the others know not how to sign, and those of the witnesses who do not know how to sign' must affix their mark.” And so the old Code (article 101) provided, as to the mystic or sealed testament, that “in case the witnesses cannot write, one of them, at least, must sign the act of superscription for all the others,” etc.; whereas, in the new Code it was provided by article 1580 (now 1587) that, “if any of the witnesses to the act of superscription know not how to sign, express mention shall be made thereof. In all cases, the act must be signed by at least two witnesses.”
Under the circumstances thus stated, it seems fairly evident that the provision now under consideration has always been understood to require that one witness, at least, should be able to sign, and, in ease of the inability of the others so to do, should sign for himself, and also, and specifically, for them; and as our reconsideration has led to the conclusion that it is readily susceptible of that interpretation,' that it does not lead to absurdity, and that, any other would require the elimination from the law of language which appears to have been deliberately used and long retained, we are of opinion that there should be judgment accordingly.
The decree heretofore handed down in this case is therefore set aside, the judgment appealed from is annulled, as are also the judgment admitting to probate and ordering the execution of the instrument herein attacked as the nuncupative testament by public act of Louis M. Bilim and said testament, together with the appointment of the executrix of the same. It is further decreed that, for the purposes of a partition between the parties interested in the estate of said decedent, Louis M. Bihm, this case be remanded to the district court, to be there proceeded with according to law, It is decreed that defendant pay all the costs of this suit.
O’NIELL and LECHE, JJ., dissent, and O’NIELL, J., hands down reasons. See 80 South. 328.